Williams v. Insurance Repair Specialists

LINDA BUTLER WILLIAMS (JENKS), Widow; AND SOUTHERN NA-
TIONAL BANK OF NORTH CAROLINA, Guardian for TERRA
FAYE WILLIAMS, Minor Daughter of PAUL DANIEL WILLIAMS,
JR., Deceased, Employee-Plaintiff v. INSURANCE REPAIR SPE-
CIALISTS OF NORTH CAROLINA, INC., Employer-Defendant
AND RELIANCE INSURANCE COMPANY, Carrier-Defendant
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
ESTES EXPRESS COMPANY, Third-Party Tort-Feasor AND LIBERTY
MUTUAL INSURANCE COMPANY, Third-Party Carrier

No. 7620IC493

(Filed 2 February 1977)

1. **Master and Servant § 89— workmen's compensation — order for dis-
tribution of wrongful death settlement**

Where an employee's death in an automobile accident arose out
of and in the course of his employment, the employer filed with the
Industrial Commission a written admission of liability for workmen's
compensation benefits, the compensation insurance carrier notified
the third-party tort-feasor's liability insurance carrier that a compen-
sation settlement was in process and that it would expect its lien upon
any settlement of a wrongful death claim by the liability carrier, the
liability carrier settled the wrongful death claim for $55,000 and paid
that amount to the deceased employee's administrator, and the Indus-
trial Commission later approved a workmen's compensation settlement
awarding $28,500 to the widow, the Industrial Commission thereafter
had authority under G.S. 97-10.2 to issue an order of distribution of
the $55,000 wrongful death settlement, including a requirement that
the liability carrier pay $28,500 to the compensation carrier in settle-
ment of its subrogation interest, notwithstanding the widow may
have spent her entire distributive share of the wrongful death settle-
ment and all of the workmen's compensation benefits paid to her and
the liability carrier may be unable to recoup any of the amount previ-
ously paid from the widow or the decedent's administrator.

2. **Master and Servant § 89— workmen's compensation — disapproval of
compensation for death agreement — order for distribution of wrong-
ful death settlement**

Where the Industrial Commission disapproved an agreement for
compensation for death only because the employee's widow was a
minor and the death benefits had been miscalculated, but the em-
ployer's admission of liability was not disapproved, the Commission
had jurisdiction to issue an order for the distribution of a wrongful
death settlement made before the Commission finally approved the
compensation agreement.

APPEALS by Insurance Repair Specialists of North Carolina,
Inc. (employer), and Reliance Insurance Company (compensa-
tion carrier); and by Estes Express Company (third-party tort-
feasor) and Liberty Mutual Insurance Company (third-party

liability carrier) from an order of the North Carolina Industrial Commission entered 8 March 1976. Heard in the Court of Appeals 20 October 1976.

On 9 August 1973 Paul D. Williams, Jr., employee, was injured and killed in a vehicle accident, which injury and death arose out of and in the scope of his employment. Linda Butler Williams (Jenks) and Terra Faye Williams were the wife and daughter, respectively, of the deceased employee.

On 13 August 1973 the employer filed with the Industrial Commission a Commission Form 19—*Employer's Report of Injury to Employee,* reporting that employee was injured and had died as the result of a vehicle accident. On 18 September 1973 the employer, its compensation carrier (Reliance), and the widow of the deceased employee filed with the Industrial Commission a Commisison Form 20—*Agreement for Compensation for Death.* By this agreement the employer made a written admission of liability for benefits under the Workmen's Compensation Act and set out the agreed compensation to be paid to the widow. The agreement was not approved by the Industrial Commission for the reasons that the amount of compensation was in excess of statutory limits and that the widow was not yet eighteen years of age.

On 2 October 1973 the compensation carrier (Reliance) advised the third-party tort-feasor's liability carrier (Liberty Mutual) by telephone that Reliance was the compensation carrier in the case and that it would expect its lien upon any settlement of a wrongful death claim by Liberty Mutual as liability carrier. By letter dated 4 October 1973 the compensation carrier (Reliance) again advised the liability carrier (Liberty Mutual) that Reliance was the compensation carrier in the case and that settlement of the compensation award was in process.

At the request of a representative of Liberty Mutual on 23 November 1973, Southern National Bank of North Carolina (Southern National) qualified in Richmond County as administrator of the estate of Paul D. Williams, Jr. (the deceased employee). On 7 December 1973 the third-party tort-feasor's liability carrier (Liberty Mutual), without the knowledge or consent of the employer or its compensation carrier (Reliance), entered into an agreement with the administrator (Southern National) of the deceased employee for the payment of the

sum of $55,000.00 in full settlement of the wrongful death claim arising out of the accident causing the death of the deceased employee, and the said sum was paid by Liberty Mutual to Southern National.

On 7 February 1974 the widow of the deceased employee reached her eighteenth birthday. On 8 February 1974 a revised Commission Form 20—*Agreement for Compensation for Death* was executed by the employer, employer's compensation carrier (Reliance), and the widow for the payment to the widow of a total of $28,000.00 at the rate of $80.00 per week beginning 9 August 1973, plus $500.00 for funeral expenses. This agreement was approved by the North Carolina Industrial Commission.

After settlement of the compensation claim, Reliance learned of the December 1973 settlement of the wrongful death action by Liberty Mutual. Reliance contacted Liberty Mutual for distribution of $28,500.00 of the wrongful death settlement to Reliance as provided by G.S. 97-10.2. Liberty Mutual declined to honor the request, and Reliance requested the Industrial Commission to issue an order of distribution of the $55,000.00 settlement pursuant to the directives of G.S. 97-10.2. The Commission sent notice on 30 April 1975 setting a hearing for 2 June 1975. Evidence was presented by the parties before Deputy Commissioner Dandelake, and an appeal from his order was taken to the Full Commission.

Based upon the stipulations and the evidence, the Commission made findings of fact substantially as heretofore set out. It made conclusions of law and entered an order as follows:

"CONCLUSIONS OF LAW

"1. The compensation agreement of February 8, 1974 between Reliance Insurance Company and deceased's widow, Linda Butler Williams (Jenks) became a formal award of the Industrial Commission by virtue of the Notice of Death Award filed February 15, 1974. Under the Workmen's Compensation Act, such awards can be set aside only upon a showing of error due to fraud, misrepresentation, undue influence or mutual mistake. There being a complete absence of evidence of such conduct, said award is in full force and effect and is to be complied with. G.S. 97-82; G.S. 97-17.

"2. The sum of $55,000 in the hands of Liberty Mutual Insurance Company, representing the proceeds of the settlement between itself and Southern National Bank as Administrator of the Estate of Paul D. Williams, Jr., is payable by Liberty Mutual for the following purposes and in the following order: first, to the payment of actual court costs; second, to the payment of attorney's fees; third, to the reimbursement of the employer for any compensation benefits and medical treatment expenses paid, and fourth, the remainder to the personal representative of the deceased employee. G.S. 97-10.2.

\* \* \* \* \*

"Based upon the foregoing findings of fact and conclusions of law, the Full Commission issues the following

## ORDER

"1. It is hereupon ORDERED that any unpaid accrued benefits under the compensation Death Award approved on February 15, 1974 be paid at this time to Linda Butler Williams (Jenks) for herself and her minor child, share and share alike, and that such Award be complied with in its entirety from and after this date, until such time as its terms have been fully complied with.

"2. It is hereupon ORDERED that the $55,000 third party settlement between the personal representative of the deceased employee and Liberty Mutual Insurance Company be disbursed by Liberty Mutual Insurance Company as follows:

"a. The third party recovery herein having been the result of a settlement between the parties, there were no court costs involved, and therefore none are payable from the proceeds of such settlement. G.S. 97-10.2 (f) (1) a.

"b. The plaintiffs having been unrepresented by counsel at the time of the settlement, no attorney's fee is payable from the proceeds of the third party recovery to counsel for the plaintiffs. G.S. 97-10.2 (f) (1) b.

"c. The sum of $28,500 shall be paid by Liberty Mutual Insurance Company to Reliance Insurance Company in full settlement of its subrogation interest. G.S. 97-10.2 (f) (1) c.

"d. The balance of $26,500 shall be paid by Liberty Mutual Insurance Company to the personal representative of the deceased employee, Paul D. Williams, Jr. G.S. 97-10.2(f)(1)d.

"3. The defendants shall pay all hearing costs."

The foregoing is the order from which the present appeal is taken.

*H. Patrick Taylor, Jr., for Linda Butler Williams (Jenks).*

*McLean, Stacy, Henry & McLean, by James Dickson McLean, Jr., for Southern National Bank, Guardian for Terra Faye Williams.*

*Leath, Bynum, Kitchin & Neal, by Fred W. Bynum, Jr., for Insurance Repair Specialists (employer) and Reliance Insurance Company (compensation carrier).*

*Hedrick, Parham, Helms, Kellam & Feerick, by Edward L. Eatman, Jr., for Estes Express Company (third-party tortfeasor) and Liberty Mutual Insurance Company (third-party liability carrier).*

BROCK, Chief Judge.

The following comment appended to the order of the Industrial Commission pretty well sums up the jurisdiction of the Commission to act in this case:

"COMMENT

"The Full Commission notes at the outset that this is not a case where the third party tort feasor was not aware of the subrogation claim of the compensation carrier. It is clear from the evidence that Estes Express Company, through its liability carrier, Liberty Mutual Insurance Company, was put on notice of the lien Reliance had on the settlement funds for any compensation benefits paid or to be paid by Reliance under a valid compensation award.

"A settlement having been reached between the representative of the deceased employee and the third party tort feasor, the correct procedure, under the statutes of our state, was for the parties thereto to petition the Industrial Commission for an Order distributing such funds. Though

somewhat belatedly, such a request was made by the compensation carrier, Reliance Insurance Company, on June 20, 1974. At such time the Industrial Commission acquired in this case the limited jurisdiction it has in third party recovery cases, pursuant to G.S. 97-10.2. Under the provisions of that statute, the Commission is directed to order distribution of the third party recovery for certain specified purposes, in a certain specified order of priorities, both clearly spelled out in the provisions of G.S. 97-10.2 (f) (1). This the Full Commission has done in this case by virtue of the above stated Order.

"The Full Commission can find nothing in G.S. 97-10.2, or in any other provision of the General Statutes of North Carolina, which would take away its authority, and its DUTY, under G.S. 97-10.2 to order distribution of third party recoveries as specified in that statute. The Full Commission is not blind to the fact that in the present case, Liberty Mutual took it upon itself to make a $55,000 payment to the estate of the deceased employee prior to the time of this Order. While it takes note of this payment, the Full Commission is unable to understand how the mere fact of such payment can in any way bear on its authority and duty to order the distribution noted in the above Order. It is the considered opinion of the undersigned that such payment in no way prejudices or otherwise affects the rights and duties of all the parties to this Order.

"The Full Commission is of the opinion that the parties hereto are legally bound to proceed as directed in the above Order. Certainly, this would in no way prejudice their rights, if any, to recoup, in ordinary civil actions elsewhere, payments erroneously made under what may have been a mistaken impression as to the proper distribution of this third party recovery. Be that as it may, the substantive merits of such matters are not properly before the Commission, and the fact of such payments is therefore irrelevant to the Commission's determination, under G.S. 97-10.2, of the proper distribution of the third party recovery now before this body. The parties to this action are bound by the provisions of G.S. 97-10.2, and are hereby ordered to proceed as directed above."

[1] It is strongly suggested by the evidence and argument of counsel that the widow has spent her entire distributive share

of the $55,000.00 wrongful death settlement and has spent the entire $3,060.00 paid to her to date under the Workmen's Compensation Act. It is urged that the widow is insolvent and none of the payments to her can be recouped. These may well be the facts, but they do not alter the proper resolution of this controversy under G.S. 97-10.2.

[2] Liberty Mutual argues that it should not be required to pay $28,500.00 to Reliance because that would cause Liberty Mutual to pay $83,500.00 for wrongful death instead of the $55,000.00 it negotiated with the estate of the deceased employee. Liberty Mutual negotiated the $55,000.00 wrongful death settlement with full knowledge of the fact that Reliance was negotiating a compensation award and with full knowledge of the following provisions of G.S. 97-10.2(f)(1):

"If the employer has filed a written admission of liability for benefits under this Chapter with . . . the Industrial Commission, then any amount obtained by any person by settlement with . . . the third party by reason of such injury or death shall be disbursed by order of the Industrial Commission for the following purposes and in the following order of priority:"

*     *     *

"c. Third to the reimbursement of the employer for all benefits by way of compensation or medical treatment expense paid or to be paid by the employer under award of the Industrial Commission."

A simple inquiry by Liberty Mutual would have disclosed that the employer filed written admission of liability with the Industrial Commission on 18 September 1973, some three months prior to Liberty's settlement agreement with the estate of the deceased employee. Even absent such a simple inquiry, because of the October 1973 telephone and letter notice from Reliance to Liberty Mutual, it seems that ordinary business precaution would have prompted Liberty Mutual to contact Reliance before consummating the December settlement. Liberty Mutual argues that the Industrial Commission was without jurisdiction to enter the distribution order. Its rationale for this argument is that no admission of liability for benefits was filed by the employer until 8 February 1974 because the 18 September 1973 filing was disapproved. This argument is not convincing. The 18 September 1973 filing was disapproved only to the extent

that the widow was a minor and to the extent that the death benefits had been miscalculated. The admission of liability was not disapproved. The Commission's jurisdiction under G.S. 97-10.2 is clear.

With the full knowledge of the law and the circumstances, Liberty Mutual consummated its settlement of the wrongful death claim in December 1973. It may be, as the widow argues, that the settlement offer by Liberty Mutual was substantially lowered because of Liberty's possible responsibility for additional disbursement under the Workmen's Compensation Act. In any event, the statute is unmistakably clear in mandating the distribution of the settlement in this case in the manner ordered by the Commission. Whether Liberty Mutual, after distributing the $28,500.00 to Reliance under the Commission's order, can then recoup from Southern National or from Southern National and the widow cannot be resolved in this proceeding. That is a matter for another forum.

It appears that the claim of the compensation carrier (Reliance) against the liability carrier (Liberty Mutual) must first be pursued under the Commission's distribution order and G.S. 97-87. Secondary relief is provided by the Workmen's Compensation Act. General Statute 97-10.2 (h) provides:

> "In any proceeding against or settlement with the third party, every party to the claim for compensation shall have a lien to the extent of his interest under (f) hereof upon any payment made by the third party by reason of such injury or death, whether paid in settlement, in satisfaction of judgment, as consideration for covenant not to sue, or otherwise and such lien may be enforced against any person receiving such funds. . . . "

The compensation carrier (Reliance) is a party to the claim for compensation. Its interest under subsection (f) is reimbursement for all benefits by way of compensation *paid or to be paid* under the award of the Industrial Commission. Whether the compensation carrier can successfully pursue its lien claim against Southern National or against Southern National and the widow is a matter of conjecture and beyond the jurisdiction of the Commission. Failing in the pursuit of its statutory lien, whether the compensation carrier could recover damages from Liberty Mutual or whether the compensation carrier could recover damages from Southern National are also matters of con-

jecture. In any event these matters are beyond the jurisdiction of the Industrial Commission.

There are no grounds upon which the Industrial Commission could vacate and set aside the award of compensation for the death of the employee. The award made was in compliance with G.S. 97-38 (where death results proximately from the accident), G.S. 97-17 (settlements allowed in accordance with article), and G.S. 97-82 (approval of settlement by the Commission). The order appealed from was entered in conformity with G.S. 97-10.2.

The order of the Industrial Commission is

Affirmed.

Judges PARKER and ARNOLD concur.